**S.L. MOTEL ENTERPRISES, INC.,**
**Plaintiff/Respondent,**

v.

**EAST OCEAN, INC. and Paul Augustine, Defendants/Appellants.**

No. 53390.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 10, 1988.

Michael Aubrey Clithero, Jeffrey Joseph Kalinowski, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for plaintiff/respondent.

Horman, William Pressman, Stern, Pressman & Soule, Clayton, for defendants/appellants.

SIMON, Presiding Judge.

Appellants, East Ocean, Inc. and Paul Augustine, appeal from a summary judgment in an unlawful detainer action entered in the Associate Division of the Circuit Court of the City of St. Louis. The court ordered restitution of the premises to respondent, S.L. Motel Enterprises, Inc., and damages of $83,333.33. Appellants raise three points on appeal: (1) that the court erred in granting summary judgment because the record indicated the existence of material issues of fact; (2) that the court erred in granting an excessive amount of damages; and, (3) that the court erred in dismissing appellants' counterclaim. Judgment affirmed as modified.

Respondent is a limited partnership owning property known as the Days Inn Hotel located in downtown St. Louis. In connection with the operation of the hotel, respondent entered into a lease with appellants on July 1, 1986, for the operation of a restaurant, lounge and banquet facilities within the hotel. The lease provided for rent as follows:

... a Base Rent of One Hundred Thousand Dollars ($100,000.00) per annum, payable in equal monthly installments in advance on the first day of each and every calendar month during the Term, except that there shall be no monthly installments of Base Rent for the first six calendar months of the Term, and any partial calendar month prior to the first full calendar month of the Term and a Percentage Rent of ten percent (10%) of Tenant's Monthly Gross Sales in excess of $83,333.33. The Percentage Rent shall be paid in monthly installments on the tenth day of each calendar month after the first calendar month or partial calendar month during the Term and on the tenth day of the first calendar month following the end of the Term.

In his affidavit in opposition to respondent's motion for summary judgment, Paul Augustine stated that appellants made rent payments to respondent totalling $26,728.94: "These payments were made under the mistaken impression that those payments were due under the lease ... Upon review of the lease, I determined that the lease required no rent payments be made unless our sales exceeded $83,333.33 per month ..." It is clear that appellants did not pay rent in January or February of 1987. Appellants contend that the rent mistakenly paid in 1986 should offset the rent owed in 1987.

The lease also provided that appellants were required to secure:

(b) Comprehensive general liability insurance (including liquor liability if alcoholic beverages are sold in the Premises) against claims for bodily injury, death and property damage occurring in or about the Premises, including but not limited to, all elevators, escalators and garages and any streets, alleys, sidewalks or parking areas, malls, vaults, passageways or common area adjoining or appurtenant to the Premises: such insurance shall afford minimum protection of $2,000,000 with respect to the personal injury or death of any one person, $3,000,000 with respect to the personal injury or death occurring or resulting from one occurrence [sic], and $500,-

000.00 with respect to property damage, and shall include water damage legal liability with limits of $1,000,000 per occurrence.

Appellants never secured insurance in the amounts specified in the lease.

Under the lease, appellants were entitled to a thirty day cure period following notice with respect to various defaults. However, no cure period was allowed for a failure to make rental payments. On December 18, 1986, respondent sent appellants notice of default with respect to the insurance coverage, among other items. On Monday, February 2, 1987, a Notice of Termination and Demand for Possession was served upon appellants notifying them of their failure to pay rent for January and February. Appellants did not vacate the premises. Respondent instituted this unlawful detainer action on February 13, 1987. Appellants filed an answer and counterclaim on April 22, 1987. On April 29, 1987, respondent moved to dismiss the counterclaim and for summary judgment. The trial court sustained the motion to dismiss the counterclaim and on May 29, 1987, granted respondent's motion or summary judgment. Appellants vacated the premises on June 12, 1987. Thereafter, on June 24, 1987, appellants filed their notice of appeal but did not file a supersedeas bond. Respondent moved to dismiss the appeal.

In its motion to dismiss the appeal, respondent contends that appellants failed to abide by the procedures delineated in Chapter 534 RSMo (1986) (all further references herein to RSMo shall be to (1986)) by failing to file a supersedeas bond within ten days of the rendition of the judgment. Specifically, § 534.380 provides:

*Judgment stay for appeals and trial de novo.*—Applications for trials de novo and appeals shall be allowed and conducted in the manner provided in chapter 512, RSMo, but no application for a trial de novo or appeal shall be allowed unless a bond which is sufficient to act as a supersedeas of the judgment is filed with the court within ten days after rendition of the judgment.

As such, respondent maintains that this court lacks jurisdiction to hear this appeal.

Our Supreme Court in *Dixon v. Davis,* 521 S.W.2d 442 (Mo.1975), considered the validity of § 535.110 RSMo (1969). That statute had previously been construed as requiring a bond by a tenant before the circuit court acquired jurisdiction of the appeal, even though the tenant had surrendered possession of the premises. *Avalon Development Co. v. American Italian Construction and Development Co.,* 437 S.W.2d 702, 704[2, 3] (Mo.App.1969). *See, First Savings Bank, F.S.B. v. Whitley,* 751 S.W.2d 60 (Mo.App.1987).

In *Dixon* it was held:

... This requirement [filing a bond] guarantees to the landlord that if he prevails on appeal he will be protected in the collection of accrued rents and rents to accrue during the pendency of the appeal; secures the payment of all damages and costs, and protects him against the commission of waste in the interim. There is justification for affording landlords these protections where the tenant elects to remain in possession. In a case such as this, however, where the tenant has surrendered possession of the premises, no future rents will accrue and no waste caused by the tenant can occur, and the landlord may proceed to enforce his judgment for money damages if he can find money or property of the tenant subject to execution. Whatever issues remain to be resolved on appeal (possession, rents, damages, costs, etc.) should be able to be litigated on their merits and the court should have jurisdiction to determine such issues, regardless of whether the appealing tenant has given an appeal bond ... Requiring such a bond, even though the tenant has surrendered possession of the premises, before the circuit court can acquire jurisdiction of an appeal on the merits creates an arbitrary classification of persons without any reasonably justifiable state interest, and violates the equal protection clauses of Article I, Section 1, Constitution of Missouri, V.A.M.S., and the Fourteenth

Amendment to the Constitution of the United States and to this extent is unconstitutional. *Dixon*, 521 S.W.2d at 444–45[1]. Here, it is undisputed that appellant vacated the premises prior to invoking the jurisdiction of this court. Therefore, no bond need be filed. Motion denied.

In their first point on appeal, appellants contend that the trial court erred in granting summary judgment because the record indicates that there were material issues of fact in that respondent failed to demonstrate that it terminated the lease and was entitled to possession of the premises. Appellants assert two sub-points: (1) the trial court considered evidence that was hearsay, and therefore not properly before the court for purposes of a summary judgment motion; and, (2) the lease was not breached and, therefore, could not be terminated because (a) appellants had prepaid rent through their mistaken rent payments and (b) appellants were in the process of obtaining higher insurance coverage.

Rule 74.04(c) (1987) provides that when a motion for summary judgment is presented, "judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." In no case, however, shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law. Rule 74.04(h) (1987). We note that the principal issue in an unlawful detainer action is the immediate right of possession. *Leve v. Delph*, 710 S.W.2d 389, 391 (Mo. App.1986).

■ In appellants' first sub-point, they maintain that respondent's Supplementary List of Exhibits in Support of Motion for Summary Judgment constituted hearsay and should not have been considered by the court in granting summary judgment. Included in the exhibits were, inter alia, the lease, the Notice of Default dated December 18, 1986 (with sworn proof of service

attached), and the Notice of Termination and Demand for Possession dated February 2, 1987 (in affidavit form). We have reviewed the documents contained within respondent's supplementary list and we find all of the exhibits were supported by affidavit, deposition, or authorized by statute and, thus, were admissible and were properly considered by the court. Sub-point denied.

In appellants' second sub-point, they contend that the lease was not terminated because the "mistaken" rent payments, made for the months they were in possession of the premises in 1986, ought to have been set-off against the amounts that they owed for rent in 1987. Appellants do not dispute that they did not make the monthly rental payments for January 1, 1987, to June 11, 1987, the date they vacated the premises. Upon default, respondent terminated the lease by serving notice to appellants on February 2, 1987. Here, it is clear that appellants paid $26,728.94 in rent from July to December, 1986, under the mistaken belief that it was due, but made no rent payments in 1987.

■ Issues relating to title or matters of equity, such as mistake, estoppel and waiver, cannot be interposed as a defense in unlawful detainer actions. *Leve v. Delph*, 710 S.W.2d at 391. Thus, appellants' mistaken interpretation of the lease is not cognizable in this proceeding and we find no genuine issue of material fact.

■ Appellants further claim that a genuine issue of material fact existed with regard to the insurance coverage because they were in the process of obtaining higher coverage and, therefore, not in contravention of the lease. The test to be applied is whether the factual dispute, if one existed, was of such legal probative force as would control or determine the result of the litigation, and hence preclude the entry of summary judgment. *Ware v. St. Louis Car Co.*, 384 S.W.2d 287, 290[2] (Mo.App. 1964). Having found a material breach of the lease, the factual dispute with regard to the insurance coverage would not determine the result of this litigation in light of

the rent payment breach. Appellants' first point is not meritorious.

In their second point on appeal, appellants contend that the trial court erred in awarding damages of $83,333.33 to respondent. In its order, the trial court provided, in pertinent part: "And further, that [respondent] have and recover of [appellants], the sum of $83,333.33, double the sum found for [respondent's] damages ..."

Appellants make three assertions in this point: (1) that respondent constructively evicted appellants so that rent should have been abated; (2) that even if respondent is entitled to monetary damages, it did not comply with the common law forfeiture procedures because rent was due on February 1, 1987, which was a Sunday, but respondent did not serve notice upon appellants until February 2, 1987, a Monday, so that an award of double damages would be inappropriate; and, (3) that even if respondent is entitled to double damages, the lease was not terminated until February 2, 1987, so that respondent was not lawfully entitled to possession until that time, and the award of damages for January and February of 1987 was incorrect.

■ As for the first assertion, we note that constructive eviction requires a substantial interference with possession or enjoyment, and the tenant must abandon the premises within a reasonable time. *Yaffe v. American Fixture, Inc.*, 345 S.W.2d 195, 197[2] (Mo.1961). Any obstruction by the landlord of the beneficial enjoyment of the demised premises or any dimunition of the consideration of the lease contract short of actual ouster may constitute constructive eviction. *Id.* at 197[1]. If the tenant fails to abandon the premises within a reasonable period of time, however, his/her failure to do so operates as a waiver. *Id.* Appellants did not abandon the property until after respondent had obtained judgment entitling respondent to possession of the premises. Therefore, appellants waived any alleged constructive eviction. Sub-point denied.

■ As for appellants' second assertion, that common law forfeiture requirements provide that demand for termination must

be made on the precise day rent is due, we note the following:

It seems to be generally conceded that if the day on which rent is payable falls on Sunday, the tenant will not be in arrears if he fails to pay on or before that date, and the time in which he has to pay will be extended to the following secular day.

Annot., 29 A.L.R. 239 (1924). Furthermore, a forfeiture of the lease for nonpayment of rent cannot be declared if payment is made on the following Monday. 49 Am. Jur.2d, *Landlord and Tenant*, § 561 (1970). Sub-point denied.

■ Appellants contend in their final assertion that since the notice of termination was served on February 2, 1987, that the award of double damages for January and February is incorrect. Clearly, since respondent terminated the lease and demanded possession on February 2, then the award of double damages for February is appropriate. We note, however, that the question remains whether respondent, in this unlawful detainer action, is entitled to damages for rent for January.

Section 534.310 RSMo provides as follows:

*Verdict for complainant—what it shall include*

Whenever the verdict of the jury or finding of the judge shall be for the complainant, damages shall be assessed as well for waste and injury committed upon the premises found to have been forcibly or unlawfully detained, as for all rents and profits due and owing up to the time of the rendering of the verdict or finding of the judge, and such verdict or finding shall also state the monthly value of the rents and profits of said premises.

Furthermore, § 534.330 provides for double damages as follows:

*Judgment on verdict for complainant*

If the verdict of the jury or the finding of the judge be for the complainant, the judge shall record the same, and the judgment shall be that the complainant have restitution of the premises found to have been forcibly or unlawfully detained, and recover of the defendant the

sum of .... dollars, double the sum assessed by the jury, or found for his damages; and also at the rate of .... dollars, double the sum found 'per month, for rents and profits, from the .... day of ...., 19.., the day of judgment, until restitution be made, together with costs.

Several cases interpreting the law of unlawful detainer in Missouri allow for damages from the time of the demand for possession up to the date the tenants vacate the premises. The court in *Lucas Hunt Village Co. v. Klein,* 358 Mo. 1054, 218 S.W.2d 595, 599[10] (en banc 1949), provided as follows:

> ... [T]he landlord can sue in the same action for restitution of the premises, and for the damages, rents and profits due and owing through the period of their detention, from the time of demand for possession up to the date of the verdict. And under Sec. 2850 (now, § 534.330 RSMo.) the judgment must double the sum assessed for the damages, and also for the monthly rents and profits up to the time of restitution.

Furthermore, in *Massey v. Goforth,* 305 S.W.2d 894, 896[2] (Mo.App.1957), the court stated:

> Damages for rents and profits in an action of unlawful detainer normally may be measured by, and assessed on the basis of, the reasonable rental value of the rented premises during the period of their unlawful detention, i.e., from the date on which complainants become legally entitled to possession of such premises ...

Since respondent did not serve notice of termination and demand for possession until February, respondent was not legally entitled to possession of the premises until that time and the damages awarded for January are in error. However, January's rent could be recovered in a separate action. See, *Klein, supra.* We further note, however, that respondent is entitled to damages in the amount of $3055.56 for the time that appellants were in possession of the premises from June 1 to June 11, 1987. Doubling that amount, is $6111.12.

Therefore, that portion of the court's order awarding respondent damages is modified, deleting $16,666.66, the amount assessed as damages for January, 1987, and adding $6,111.12, the amount of damages for the period appellants retained possession of the premises following the entry of the judgment, i.e., June 1 to June 11, 1987. Therefore, the judgment is reduced to the amount of $72,777.76.

■ In their final point, appellants contend the court erred in dismissing their counterclaim. The counterclaim contained four counts: (1) unjust enrichment, seeking $24,712.00 for overpaid rents; (2) breach of contract, seeking $100,000.00 for repair work problems; (3) constructive eviction, seeking $20,000.00 actual damages and $1,000,000.00 punitive damages; and, (4) breach of contract, seeking $100,000.00 for damages resulting from respondent's failure to replace equipment. Respondent's Motion to Dismiss Defendant's Counterclaim was sustained by the court below.

The court in *Lake In The Woods Apartment v. Carson,* 651 S.W.2d 556, 558[1, 3] (Mo.App.1983) held as follows:

> The unlawful detainer statute is an exclusive and special code to which ordinary rules and proceedings of other civil actions do not apply. The sole issue is the immediate right of possession ... It is generally held that counterclaims are also prohibited in unlawful detainer proceedings, regardless of the subject matter, unless permitted by statute. Missouri statutes do not so permit.

(Citations omitted). Point denied.

Judgment affirmed as modified.

CRANDALL and GRIMM, JJ., concur.