**R & J RHODES, LLC, Appellant,**

v.

Jerry FINNEY, Rick Fields, Darrell Wattenbarger, William Rhodes, City of Brookfield, and John Wayne Hoyt, Respondents.

No. WD 66588.

Missouri Court of Appeals, Western District.

May 29, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2007.

Application for Transfer Denied Sept. 25, 2007.

David M. Duree, St. Louis, MO for appellant.

Danette Rardon, Chillicothe, MO, Scot T. Othic, Co–Counsel, Marceline, MO, for respondents Finney and Rhodes.

Jack A. Lewis, North Kansas City, MO, for respondent Fields.

Jeff S. Elson, Brookfield, MO, for respondent City of Brookfield.

Darrell Wattenbarger, Columbia, MO, pro se.

John Wayne Hoyt, Brookfield, MO, pro se.

Before THOMAS H. NEWTON, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

R & J Rhodes, LLC, appeals from a judgment denying its claims of trespass or, in the alternative, breach of contract, and assessing damages against it for counter-

claims of breach of contract and constructive eviction.

In 1985, the City of Brookfield ("the City") entered into a lease with six aircraft owners concerning a small portion of a tract of land in Linn County, Missouri. The lessees included Respondents Jerry Finney, William Rhodes, and Rick Fields, along with three other individuals who transferred their interests in the lease before Appellant's involvement.[1]

The City demised to the lessees approximately one acre of land ("the leased premises") in the northwest corner of an approximately 135–acre tract that was being operated by the City as the General John J. Pershing Memorial Airport ("the airport land"). The term of the lease was 40 years. Together with the use and occupation of the land for an airport hangar building and "associated activities," the City granted the lessees the "right of reasonable ingress and egress to and from the demised premises."

The lease provide that "in consideration of Lessor making available its property, Lessee[2] may erect or cause to be erected on the demised premises a hangar building of an approximate size of 6400 square feet." The plans had to be approved by the City before construction commenced. The lessees submitted plans, which the City approved, and the lessees erected a hangar building.

The lease does not provide for any payment of rent but imposes numerous obligations on the lessees, all of which were to be undertaken at the lessees' expense.[3] It provides that the hangar buildings and any improvements, etc. are considered the lessees' personal property, and they would be permitted to remove the personal property "upon expiration of the lease."

In the event of default by the lessees, §§ 5 and 10 provide that the lessor must notify the lessees of the nature of the default and allow 60 days to remedy or cure the breach. If the lessees failed to cure within 60 days, the lessor could re-enter the leased premises. If the default was for failure to maintain or repair the buildings and surrounding property, the lessor could restore the buildings and premises to good condition and had discretion to declare forfeiture of the lease (§ 5). If the default concerned any of the other covenants, the lessor could "re-enter the hangar building by summary or other proceedings and remove all persons and things therefrom" without liability therefor

---

1. The original lessees were William Rhodes, Gene Fields, Rick Fields, Jerry Finney, Robert Cordray, and Darrell Wattenbarger. Wattenbarger sold his aircraft and transferred his interests and obligations under the lease to Gene Fields in 1986. Gene Fields and Robert Cordray both passed away before trial. Gene Fields's interest passed to Rick Fields, and Robert Cordray's interest passed to his wife. Although Wattenbarger and Ms. Cordray's alleged personal representative were defendants to Appellant's petition, Appellant reached an agreement with Ms. Cordray prior to trial and did not seek relief against Wattenbarger.

2. The lease refers to all six lessees, collectively, as one lessee.

3. The lessees were required to pay all property taxes on the hangar building and other improvements (§ 4). They also had to maintain the hangar building and immediately surrounding property in good condition and repair, including keeping them free from weeds, filth, fire hazards, and other nuisances (§ 5). The lessees had to maintain insurance for a set minimum amount to insure the lessor against liability for personal injury or death and loss or damage to property. They were also obligated to maintain fire and extended coverage insurance for at least the amount of the insurable value of the property for the benefit of the lessee and the lessor, as appropriate for their respective interests, and to provide the lessor with evidence of all such policies (§ 6).

(§ 10). Under § 8, if the hangar building was destroyed in whole or in part, the lessees were required to either (1) rebuild or restore or (2) remove all damaged buildings and restore the land to its original condition within 120 days. If the lessees chose to remove the buildings instead of repairing or rebuilding, then the lease would terminate. There are no other provisions regarding termination of the lease. The lease is binding on all parties, their heirs, personal representatives, assigns and successors in interest.[4]

As noted above, the 135–acre tract on which the leased premises was located was being operated as a municipal airport facility at the time the lease was executed. There are two runways on the airport land adjacent to the leased premises, one paved and the other grass. There is also a public road providing vehicle access approximately fifteen feet from the leased premises.

In 2000, the City decided to close the municipal airport in exchange for funding to construct a regional airport approximately five miles away. In November 2001, the City conveyed the airport land to John Wayne Hoyt by general warranty deed, "subject to any and all easements of record and further subject to the rights of all lessees with leasehold interests to portions of the property." Hoyt was to receive possession of the airport land when the City ceased to use the property as a municipal airport facility and runway, but no later than July 1, 2002.

On April 29, 2004, Hoyt transferred the airport land to Appellant by general warranty deed, "subject to any and all easements of record and further subject to the rights of all lessees with leasehold interests to portions of the property."

On May 4, 2004, Richard Rhodes sent a "notice" to each of the lessees on Appellant's behalf. The notice stated that the airport had been closed for more than 22 months, that the leased premises had not been used solely for the purpose of an airport hangar and associated activities since that time, and that it could not be used as such because the airport was closed. The notice further set forth several alleged actions by the lessees in default of the lease agreement, referring to specific provisions in the lease. Finally, the notice demanded, among other things, that the lessees vacate the premises and relinquish all rights in the lease and the hangar buildings within six days.

One month later, on June 4, 2004, Richard Rhodes sent another "notice" to the lessees. In addition to summarizing the contents of the first notice, the second notice stated that the lessees had been trespassing since May 4, 2004, and cited additional actions allegedly in breach of the lease. It indicated that the lessor had employed an attorney, that the lessees were responsible for attorney fees under the lease, and that any future trespassing by the lessees would be prosecuted civilly and criminally, representing that a copy had been sent to the sheriff and prosecuting attorney.

Appellant subsequently posted "no trespassing" signs on the airport land near the leased premises. The lessees initially ignored the notices and signs, but Jerry Finney eventually contacted an attorney to initiate legal proceedings against Appellant. The attorney advised Finney to "accept" Appellant's alleged breach of the lease, so he removed his hangar building

---

**4.** In 1987 and 1988, the parties entered into two short addenda, by which the legal description of the leased portion was amended slightly for clarification and the leased portion was increased to approximately 1.2 acres, respectively. In all other respects, the lease remained unchanged and in full effect.

from the leased premises on July 29 and 30, 2004, by tearing down the building and hauling away the associated debris. Rick Fields, the other lessee with a hangar building on the leased premise, also began removing his building on July 30, 2004, and finished in early August 2004.

On August 4, 2004, Appellant's attorney sent a letter to the lessees advising that he had been retained and again accusing the lessees of trespass and breach. He "declare[d] a forfeiture" of the lease but proposed a "settlement" in which the lessees were required to sign an affidavit "acknowledging termination of the lease." In conclusion, he indicated that Appellant intended to "institute swift legal action" and gave the lessees fifteen days to return the attached affidavit. The letter cites several specific provisions of the lease as the basis for Appellant's actions.

The day after that letter was sent, Appellant filed suit against Finney, Fields, and William Rhodes for trespass or, in the alternative, breach of contract. Finney and William Rhodes filed counterclaims for breach of contract and constructive eviction. The case was tried to the court on November 23, 2005, in the Circuit Court of Linn County. The court subsequently entered its Findings of Fact, Conclusions of Law, and Judgments, ruling against Appellant on its petition and in favor of Finney and Rhodes on their counterclaims. The court awarded damages to Finney and Rhodes for the value of the hangar building and lost opportunity damages under the lease.

Appellant brings four points on appeal, the first three of which generally assert that the trial erred in entering judgment in favor of, and awarding damages to, Respondents Jerry Finney and William Rhodes on their counterclaim against Ap-

pellant. Points I and II posit error in entering judgment on the counterclaim and awarding damages for breach of the lease, asserting that the lease had been terminated. Point III claims that the award of damages was erroneous because there were no damages sustained from any breach of the lease by Appellant. Finally, in Point IV, Appellant contends that the trial court erred in entering judgment in favor of Respondents Jerry Finney, William Rhodes and Rick Fields on its petition for trespass [5] because said Respondents entered upon Appellant's property without authority.

■■■ "In reviewing a court-tried case, we must affirm the judgment of the trial court unless it is unsupported by substantial evidence, against the weight of the evidence, or erroneously declares or applies the law." *Cameron Mut. Ins. Co. v. Woods*, 88 S.W.3d 896, 899 (Mo.App. W.D. 2002). "The interpretation of a contract is a question of law" and is subject to *de novo* review. *Dean Mach. Co. v. Union Bank*, 106 S.W.3d 510, 520 (Mo.App. W.D.2003). However, "[w]e defer to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *SD Invs., Inc. v. Michael–Paul, L.L.C.*, 90 S.W.3d 75, 85 (Mo.App. W.D.2002) (internal quotation omitted). "In Missouri, a lease ... is both a conveyance and a contract." *Wetherbee, Ltd. v. Allred*, 969 S.W.2d 756, 758 (Mo.App. W.D.1998). Thus, we review the court's interpretation of the lease *de novo* but defer to the court's findings of fact.

In Point I, Appellant argues that the trial court erred as a matter of law by

---

**5.** Although Appellant also refers to the court's denial of its alternative claim for breach of the hangar lease, it only addresses the findings regarding trespass in its argument.

holding that Appellant anticipatorily breached the lease and constructively evicted Respondents by depriving them of use of the premises. The trial court found that:

> [T]he purpose of the lease was to enable the lessees to fly their airplanes on the airstrip and to have use of a portion of the property for a "hangar building and associated activities," for a term of forty (40) years.

Appellant notes that there is no express language in the lease permitting use of the airport or airstrip. It contends that it had the absolute right as owner of the 135–acre tract to cease airport operations at any time and that the trial court erred in finding that the lease required otherwise.

■ Initially, Appellant claims that the lease must be interpreted as an accommodation lease. It makes the bare assertion that the leased premises could be used only so long as the adjoining property was operated as an airport, but provides no citation to any relevant legal authority that might support the argument. "If an appellant fails to support a contention with relevant authority, the point is considered abandoned." *8182 Maryland Assoc. v. Lurie*, 949 S.W.2d 150, 151 (Mo.App. E.D. 1997). Thus, this contention is abandoned.

Appellant goes on to make the additional bare assertion that, "[a]s a matter of law," the lease cannot be interpreted as permitting the lessees to use the runways on the 135–acre tract. Once again, Appellant provides no citation to authority, other than cases regarding the general rules of contract interpretation. As such, this contention is likewise abandoned. However, even if it were not abandoned, as noted by the trial court, the lease provided for ingress and egress. There is no reason to have an airplane hangar where one can store the plane unless there is a means of getting the plane to the hangar. In other words, ingress and egress in the context of this lease, as found by the trial court, can only mean that the lessees have use of the runways to fly their airplanes.

■ Next, Appellant contends that the lease terminated when the prior owners ceased operating the land as an airport because the reasons for the lease ceased to exist. Once again, Appellant provides no authority for this contention, although it appears to be an argument regarding commercial frustration. As stated by the learned trial judge:

> The fact that the lessor decided to discontinue the *municipal* airport aspect of the use does not frustrate the purpose of use of the land as a *private* airport for "... purpose(s) of an airport hangar building and associated activities". [*sic*] No one attempted to frustrate the purpose of the Hangar Lease except the plaintiff herein. The defendant, City of Brookfield, in its contract to defendant, Hoyt, provided that possession shall be subject to the rights of the existing tenants. Likewise, in the real estate contract between defendant, Hoyt, and Roberts which was subsequently assigned to the plaintiff, there was no frustration of purpose, in view of the fact that the remaining lessees continued to use the hangars and to operate the runway with no interference from the defendant, City of Brookfield or from defendant, Hoyt. (Emphasis in original.)

■ Next, Appellant contends that the court erred in finding that it constructively evicted Respondents. "A constructive eviction occurs, when the lessor, by wrongful conduct or by the omission of a duty placed upon him in the lease, substantially interferes with the lessee's beneficial enjoyment of the demised premises." *City of St. Joseph, Mo. v. St. Joseph Riverboat Partners*, 141 S.W.3d 513, 517 (Mo.App.

W.D.2004) (internal quotation omitted). The lessee waives any claim of constructive eviction by failure to abandon the premises within a reasonable period of time. *S.L. Motel Enters., Inc. v. East Ocean, Inc.*, 751 S.W.2d 114, 118 (Mo.App. E.D.1988).

■ Appellant argues that it did not constructively evict the lessees because it did not "force" the tenants to stop using the leased premises and never physically precluded them from entering. However, actual physical preclusion is not required to establish constructive eviction. "Any obstruction by the landlord of the beneficial enjoyment of the demised premises or any diminution of the consideration of the lease contract short of actual ouster may constitute constructive eviction." *Id.*

■ The record supports a finding that Appellant interfered with the lessees' enjoyment of the property under the lease because one purpose of the lease, as discussed above, was for the lessees to be able to fly their planes by using the runway and use the hangars. In addition to sending the notices indicating that the land would no longer be operated as an airport, Appellant posted no trespassing signs and parked a tractor in the runway on at least one occasion. More importantly, Appellant repeatedly demanded that the lessees relinquish all rights under the lease and hand over the hangar buildings to it even though the buildings are considered the lessees' personal property under the lease. It also threatened civil and criminal suits and attorney fees if the lessees did not vacate the property immediately, representing that copies of the notice had been sent to the sheriff and prosecuting attorney. The trial court could have reasonably inferred that the tenants were fearful of being sued and did not wish to leave their personal property for Appellant's personal use.

The lessees vacated the premises within a reasonable time after receiving Appellant's notices and actions interfering with their substantial enjoyment of the premises. Finney and Fields tore down the hangars as a direct result of Appellant's actions, and Finney testified that that was the only way to remove them from the property. In the face of its prior notices and actions, Appellant's claim that it "permitted" the lessees to remove their personal property in accordance with the lease rings hollow. Thus, the record supports a finding that that Appellant constructively evicted the lessees and that they sustained damages as a result.[6]

Finally, Appellant argues that the lease terminated when Respondents "voluntarily" removed the hangar buildings, relying on § 8 of the lease and the theory of abandonment. Both of these arguments ignore the fact that the lessees removed, and thereby destroyed, the buildings only after Appellant hindered their use of the hangars and runways and threatened civil and criminal prosecution.

For all of the above reasons, the record supports a finding that Appellant anticipatorily breached the lease and constructively evicted Respondents. Point denied.

---

6. Appellant cites *City of St. Joseph, Mo. v. St. Joseph Riverboat Partners*, 141 S.W.3d 513 (Mo.App. W.D.2004), for the proposition that it could not have constructively evicted the lessees, as a matter of law, because the lease had no value once the adjoining land ceased airport operations and it was not obligated to operate the airport for the term of the lease.

Aside from the fact that we have already denied Appellant's arguments on these issues, *see supra*, the case simply does not stand for this proposition. Although the case states the requirements for constructive eviction, it does not discuss whether constructive eviction actually occurred or could have occurred. *Id.* at 517.

█ In Point II, Appellant claims that the trial court erred in determining that Respondents sustained damages for lost opportunities to use the leased premises for the next 21 years. The trial court awarded Jerry Finney and William Rhodes $38,250.00 in lost opportunity damages. The amount of the damages was calculated based on Finney's testimony that the cost to rent a hangar in the area would be $150 per month.

Curiously, Appellant makes no argument about the evidentiary basis for the amount of damages other than to state that the amount was based on Jerry Finney's testimony as to his opinion of the cost of leasing another hangar, while noting that Finney had not actually leased another hangar. Appellant asserts only that the court erred as a matter of law in awarding future damages because there was no basis for the damages, again failing to cite any authority in support. The remainder of Appellant's argument under this point is a rehash of its arguments in Point I that the lessees voluntarily abandoned the premises and that there was no constructive eviction. Accordingly, for the reasons discussed in the preceding point, Point II is also denied.

Appellant's Point III asserts that the trial court erred in awarding any damages to Respondents on their counterclaims. In addition to the lost opportunity damages referred to *supra*, the trial court awarded Jerry Finney and William Rhodes damages for "their investment in the hangar at the appraised value of $13,000.00." In this point, Appellant claims that the trial court erred in awarding all damages, the $13,000.00 and the $38,250.00 in lost opportunity damages.

Appellant essentially reargues the same issues raised in its Points I and II, which

we have previously rejected. Therefore, we will only discuss those arguments not made in the earlier points.

Appellant first claims that Finney and Rhodes were not entitled to damages for the value of the hangar building because their only remedy under the lease was to remove the buildings at the expiration of the lease. This argument ignores the fact that the lessees were obliged to remove the hangar buildings approximately 21 years before the lease was intended to expire and that they were removed only as a result of Appellant's actions.

█ Although Appellant did not object to the values at trial, it also argues that the valuation of the hangar building was erroneous because it was based on an appraisal by an unknown person and the appraisal itself was not introduced into evidence. This is essentially a claim of lack of foundation for the evidence. "To preserve for appellate review an error regarding the admission of evidence, a timely objection must be made when the evidence is introduced at trial. If the objection is not made at the time of the incident giving rise to the objection, the objection may be deemed waived or abandoned." *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 168 (Mo.App. W.D.1997) (internal citation omitted). Moreover, "[a]n owner is presumed competent to testify as to the reasonable value of his personal property prior to its damage or destruction without further qualification." *Sharaga v. Auto Owners Mut. Ins. Co.*, 831 S.W.2d 248, 253 (Mo.App. W.D.1992). Appellant presented no contradictory evidence, and the court awarded slightly less than the full value of the hangar building as stated by Finney.[7] Under the circumstances, the award of

---

7. The court awarded $13,000 instead of $13,800, possibly to account for the scrap value of the destroyed building, which was not specified at trial.

damages for the value of the hangar building was not an abuse of discretion.

Appellant further asserts that Finney and Rhodes are not entitled to lost opportunity damages because they did not actually rent another hangar and there was no guarantee that the lease would have continued unchanged for the full 21 years remaining in the term. The lessees are entitled to compensation for the lost value of the lease because it is a "natural and direct consequence of the breach of a lease." *Wetherbee*, 969 S.W.2d at 758 (internal quotation omitted). The fact that Finney had not yet rented another hangar is irrelevant.

Finally, Appellant argues that William Rhodes was not entitled to any damages because he had no interest in the lease or hangar building. Rhodes testified that he sold his plane approximately ten years before trial, that he never used the airport for take-offs or landings after the City closed municipal operations in 2002, and that he transferred his interest in the hangars to Finney approximately two or three years after entering into the lease. He stated that he had nothing to do with the hangar building or its removal. Under the evidence presented, we agree that Rhodes is not entitled to any damages.

Pursuant to Rule 84.14, the appellate court is to "give such judgment as the court ought to give" and finally dispose of the case. Since it is undisputed that Rhodes transferred his interest in the hangar buildings to Finney, and there was no evidence of lost opportunity damages attributable to Rhodes, we have "confidence in the reasonableness, fairness, and accuracy of the conclusion reached" and can render the judgment the trial court should have rendered. *LaRocca v. LaRocca*, 135 S.W.3d 522, 526 (Mo.App. E.D.2004). Accordingly, we modify the trial court's judgment to reflect that all damages are awarded to Jerry Finney alone.

In Point IV, Appellant argues that the trial court erred in finding in favor of Respondents on Appellant's claim of trespass as alleged in Count I of Appellant's Petition. "Trespass is the unauthorized entry by a person upon the land of another, regardless of the degree of force used, even if no damage is done, or the injury is slight." *Ogg v. Mediacom, L.L.C.*, 142 S.W.3d 801, 807 (Mo.App. W.D. 2004) (internal quotation omitted). "The unauthorized entry may be made by a person or an object as a result of a person's actions." *Rychnovsky v. Cole*, 119 S.W.3d 204, 211 (Mo.App. W.D.2003). Appellant contends that the lessees were guilty of trespass because the lease had terminated, so their entry on the leased premises was unauthorized.

Appellant first claims that Respondents were guilty of trespass for remaining on the land after the City, Hoyt, or Appellant ceased airport operations because the lease had been terminated and the lessees, therefore, had no authority to enter the premises. As we have already rejected Appellant's claims that the lease had terminated, this claim must also fail.

Alternatively, Appellant argues that Respondents trespassed by allowing debris to enter on the adjoining land and the leased premises after they removed the hangar buildings, again claiming that the lease terminated when the lessees "voluntarily" abandoned the premises. Appellant presented evidence at trial that debris, insulation, and abandoned barrels were found throughout the 135–acre tract. Appellant offered further evidence that the cost of cleaning up styrofoam and fiberglass insulation and related debris on that tract was $9,400.00. There was also some evidence that the debris came from the activities of Jerry Finney, William Rhodes, and Rick

Fields, at or near the hangars. Appellant claims that these same lessees "also left behind debris, part of one of the hangar buildings after they vacated the premises and removed the parts of the hangar buildings they wished to remove, during early August 2004."

Appellant's argument is based on its view of the evidence, and the credibility it attributes thereto, as opposed to that required by our standard of review. "[T]his Court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *Blair v. Blair*, 147 S.W.3d 882, 885 (Mo.App. W.D.2004). Moreover, "[t]his court defers to the trial court's determinations as to the credibility of witnesses as the trial court may believe all, part, or none of any witness's testimony." *State ex rel. Moore v. Brewster*, 116 S.W.3d 630, 639 (Mo.App. E.D.2003).

We first note that we have previously rejected Appellant's argument that Respondents voluntarily abandoned the premises and thereby terminated the lease. Second, it is clear that the trial court found the testimony of Appellant's primary witness, Richard Rhodes, less than credible, going so far as to state in its findings at one point that his testimony "gives this court great pause as to his veracity." Third, as we have already seen, the trial court found, and we have sustained that finding against Appellant's attack on appeal, that the lease had not been terminated and that, therefore, the obligations of both the lessor and the lessees continued. Since trespass is the unauthorized entry upon land, the lessees could not be guilty of trespass because they had a right of ingress and egress and the right to remain on the property.

Moreover, even if Respondents could be found liable for trespass, no convincing evidence was presented to prove that any of them caused Appellant damage. The only evidence that Appellant presented to the court were pictures taken between May 2004 and August or September of 2004. There was no evidence presented that Finney, Rhodes, or Fields was the person who placed debris on the property. In fact, direct testimony was given that disputed Appellant's claim. Finney testified that he kept the hangar property in good repair and free of weeds, filth, and fire hazards. He also testified that he removed his hangar from the property and cleaned, picked up everything, swept the cement, and did not leave any weeds, debris, trash, or litter. Jim Tornow, who assisted Finney in removing the hangar building, corroborated this testimony by stating that there was no trash except for a rail when he left the site on July 30, 2004. Tornow also testified that none of the fiberglass had blown off because he and Finney had piled everything onto a trailer. Therefore, even if Appellant had proven that a trespass had taken place, it failed to show that Respondents Finney, Rhodes, or Fields were responsible for the debris. Point denied.

In conclusion, we modify the trial court's judgment to reflect that all damages are awarded to Jerry Finney alone. In all other respects, the judgment of the trial court is affirmed.

All concur.