Robert WHYZMUZIS and Sara Whyzmuzis, Appellants,

v.

PLAZA SHOE STORE, INC., Robert O. Lee, Barbara Lee, Cathy Belk, and Tim Lee, Respondents.

No. SD 31766.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 17, 2012.

Ginger Gooch, Springfield, for Appellant.

Robin James Aiken, for Respondent.

DANIEL E. SCOTT, P.J.

Plaza Shoe Store ("Tenant") leased space in a shopping center owned by appellants ("Owner").[1] When a new roof was needed through no fault of Tenant, the parties disputed who should bear the cost. Tenant relocated and Owner sued for breach of contract. In a bench trial, the court denied Owner's claim, finding that Tenant was constructively evicted.

The premises were not tenantable without a new roof. The case turns on who had to pay for it. Tenant could not escape the lease if it had to pay for reroofing, but if that was Owner's duty, its refusal to do so excused Tenant's lease performance.

The lease does not expressly allocate this responsibility. Per principles cited in Missouri cases and elsewhere, we conclude that Tenant did not have to pay for reroofing and did not waive its constructive eviction defense.

### Background [2]

For over 40 years, Tenant did business in Springfield's Plaza Shopping Center, which Owner has owned since 1991. In addition to their business relationships, the parties to this case share family ties.[3]

In 2004, the parties entered into their latest lease. The term was five years. It included this provision on repair and maintenance:

> [Tenant] shall, at [its] own expense and at all times, maintain the premises in good and safe condition, including plate glass, electrical wiring, plumbing and heating installations and any other system or equipment upon the premises and shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear excepted. [Tenant] shall be responsible for all repairs required, including the roof, exterior walls, structural foundations and all other items. This is a triple net lease: [Tenant] is responsible for all repairs and maintenance.

---

1. We mean "Owner" to refer to appellants collectively and "Tenant" to cover all respondents unless otherwise stated or suggested by context.

2. We defer to the trial court's determinations of credibility and specific findings on contested facts. *Wesley v. Dir. of Revenue,* 309 S.W.3d 442, 444 (Mo.App.2010). All fact issues upon which no specific findings were made are deemed to have been found in accordance with the result. *Id.*

3. Tenant's president Robert Lee is Sara Whyzmuzis's brother, Barbara Lee's husband, and father of Cathy Belk and Tim Lee, who managed Tenant's day-to-day operations at times relevant hereto. Ms. Whyzmuzis is Ms. Lee's sister-in-law and paternal aunt to Ms. Belk and Tim Lee. The parents of Robert Lee and Ms. Whyzmuzis were Plaza Shopping Center's original owners. This is the second time this court has been asked to review a decision regarding the parties' contractual obligations. *See Whyzmuzis v. Plaza Shoe Store, Inc.,* 859 S.W.2d 227 (Mo.App.1993).

Tenant's roof leaked rainwater, even before the new lease, but conditions grew much worse after a major ice storm in early 2007. Tenant kept trying to fix the roof, which had exceeded its useful life. Rainwater damaged storeroom merchandise and leaked onto the sales floor.

Owner ignored Tenant's February 2007 request to replace the roof. Tenant sent a second request in March. In reply, Owner cited the lease language above and told Tenant to fix the roof or face eviction.

In August 2007, Tenant notified Owner that the roof was beyond repair and leaked so much that it was becoming impossible to conduct business there. Reroofing estimates ran from $120,000 to $180,000.

The impasse continued until October 2007 when, *inter alia*, Owner signed a listing agreement to secure another renter (October 9), and Tenant vacated the premises (October 31). Other than roof degradation, Tenant left the premises in substantially the same condition as when the lease began in 2004.

Owner sued, alleging that Tenant breached the lease by not repairing the premises or paying rent for the full term. The trial court ruled otherwise, making several findings relevant to this appeal:

- Tenant made substantial efforts to repair and maintain the roof, which had exceeded its useful life.
- Leaking water caused an unreasonable risk of danger to the health and safety of Tenant's customers.

- Owner was notified of the need for roof replacement, but refused to do so.
- Tenant did not breach the lease; Owner constructively evicted Tenant.
- Tenant did not waive its constructive eviction defense.

## Standard of Review

We will affirm the judgment if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. The judgment is presumed correct and Owner must show otherwise. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Allen v. Allen*, 330 S.W.3d 838, 841 (Mo.App.2011).

## Point I

 Owner disputes the constructive eviction finding,[4] urging that reroofing was Tenant's duty under the repair and maintenance clause. We disagree.

Although each party cites lease language to support its view on this issue, the lease does not specify who should pay for structural roof repairs. As to case law, Owner focuses on *Washington University v. Royal Crown Bottling Co.*, 801 S.W.2d 458 (Mo.App.1990), while Tenant emphasizes *Miller v. Gammon & Sons, Inc.*, 67 S.W.3d 613 (Mo.App.2001). Both cases involved "net lease" tenants who denied that repair clauses covered structural repair or replacement. Different facts dictated different outcomes which we consider and contrast.

4. Constructive eviction occurs when the lessor, by wrongful conduct or by the omission of a duty placed upon him in the lease, substantially interferes with the lessee's beneficial enjoyment of the demised premises. The lessee waives any claim of constructive eviction by failure to abandon the premises within a reasonable period of time.

*R & J Rhodes, LLC v. Finney*, 231 S.W.3d 183, 188–89 (Mo.App.2007) (quotation marks and citations omitted). Any obstruction by the landlord of beneficial enjoyment of leased premises short of actual ouster may constitute constructive eviction. *Id.* at 189.

### Legal Principles—Washington University and Miller

 A court's prime concern is to effectuate the parties' true intention by considering the lease language. *Washington University*, 801 S.W.2d at 464. Repair clauses derive meaning from all relevant circumstances reflected in a lease. *Id.* at 465. The usual and ordinary meaning of repair does not include repairs structural in nature. *Id.*

 At least for short-term leases, "policy supports requiring specific language" if a lessee is to make structural repairs. *Miller*, 67 S.W.3d at 623; *see also Washington University*, 801 S.W.2d at 465. Even a "net lease" does not necessarily require a lessee to make structural repairs absent an explicit obligation to do. *Miller*, 67 S.W.3d at 623. Substantial structural repairs naturally fall to the lessor; shifting this burden to a lessee should require specific lease language. *Id.* (citing *Mobil Oil Credit Corp. v. DST Realty, Inc.*, 689 S.W.2d 658, 660–61 (Mo.App. 1985)).

 A repair clause should be construed in light of any surrender clause. *Miller*, 67 S.W.3d at 621. Generally, a tenant should not have to surrender leased property in better structural condition than it was received. *Id.* at 624.

### The Law Applied in Miller

In *Miller*, a leased building's parking lot needed re-paving, with cost estimates running 27–45% of annual rent. The tenant was not to blame; the surface was at the end of its natural life. Under the four year "net-net-net lease," the tenant had to pay for all maintenance and repair, and to surrender the premises at the end of the lease "in as good condition as received, ordinary wear and tear excepted." *Id.* at 622. Because the lease did not expressly obligate the tenant to make structural repairs, our western district held that the tenant was not required to pay for re-paving,

> in light of the short-term nature of the lease in this case, the high cost of the structural repair compared to the annual rent, the absence of any benefit of the repair to the lessees, and the deteriorated condition in which the lessees received the parking lot at the beginning of the original lease. . . .

*Id.* at 624.

### The Law Applied in Washington University

By contrast, *Washington University* "present[ed] circumstances which differ from those found in short-term leases." 801 S.W.2d at 465. That lease was for 25 years; covered four parcels of real estate; provided for demolition, construction, and renovation of buildings for a soft drink bottling and distributing operation; and amortized those costs into rental payments over the lease term. *Id.* at 461. A repair clause in such circumstances is more apt to be construed literally. *Id.* at 466 (citing 1 M. FRIEDMAN, FRIEDMAN ON LEASES § 10.601 p. 656 (3d ed.1990)). Thus, "in the context of the entire lease and the circumstances reflected in the lease," the lessee's duty to repair and maintain the premises included structural repairs. *Id.*

### This Case

 No extended analysis is needed. This case is much closer to *Miller* than to *Washington University*. Legal principles recognized in both cases dictate an outcome in line with *Miller*.

This result is consistent with another case we find instructive. In *Hadian v. Schwartz*, 8 Cal.4th 836, 35 Cal.Rptr.2d 589, 884 P.2d 46 (1994), the City of Los Angeles ordered expensive "quake-proof-

ing" of certain buildings. *Id.* at 49. The lease for the building at issue required the tenant to make all required repairs and to comply with all statutes and orders. *Id.* at 48. To determine whether the lessor or lessee bore the quake-proofing costs, the court looked at six factors:

1. Comparison of the cost of the curative action to the rent reserved.
2. The lease term.
3. Relationship of the benefit to the lessee vs. the lessor.
4. Whether or not the curative action was structural.
5. Interference with the lessee's use of the premises during the curative action.
6. Likelihood that the parties contemplated the curative action.[5]

*Id.* at 52–54. Because the balance of these factors favored the lessee, "the probable intent of the parties here was that the *lessor* would bear the cost of complying with orders not arising from the lessee's particular use of the property." *Id.* at 54.

If we use a similar approach, the balance of factors favors Tenant. The first two factors favor Tenant because the new roof's cost was high compared to rent for the rest of the lease. The third factor favors Tenant because it had no guarantee of lease renewal, but Owner would have a new roof either way. The fourth factor also favors Tenant. The last two factors, in our view, do not favor either party.

In summary, Tenant's lease did not expressly require it to pay for structural roof repair or replacement. In light of the short lease term,[6] high reroofing cost rela-

tive to rent, and potentially short benefit to Tenant, we cannot find Tenant responsible for reroofing. *See Miller,* 67 S.W.3d at 624. The premises' untenantable condition and Owner's refusal to address the roof worked a constructive eviction. Owner's first point fails.

### Waiver

 Owner argues that any constructive eviction was waived because Tenant knew of roof leaks when it signed the new lease. Waiver, the intentional relinquishment of a known right, was Owner's burden to prove in this instance. *See Dice v. Darling,* 974 S.W.2d 641, 645–46 (Mo. App.1998). In the context of constructive eviction, a waiver occurs when a tenant fails to abandon the premises within a reasonable period of time. *Finney,* 231 S.W.3d at 188–89.

The trial court found that the leaks "were more or less manageable," but "became much worse" after the 2007 ice storm. We take this to mean they did not substantially interfere with use of the premises before 2007. Given this and the subsequent timeline, we cannot say that Tenant stayed too long. We reject Owner's second point and affirm the judgment.

DON E. BURRELL, C.J., and JEFFREY W. BATES, J., concur.

---

5. We slightly altered the wording of these factors to highlight their general applicability outside *Hadian* 's specific context.

6. We decline Owner's invitation to treat this five-year lease as a 40–year retrospective lease based on Tenant's prior occupancy.